UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CAREY WAYNE PARKER,<br><br>Defendant. | Case No. 4:24-cr-00158-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are various motions made before and during Defendant Carey Wayne Parker's three-day trial for possession with intent to distribute fentanyl. Dkts. 73–76; 86; 89; 91. During trial, the Court took multiple matters under advisement or made rulings from the bench and noted a written decision would follow. As explained in more detail below, the Court excluded expert testimony under Fed. R. Crim. P. 16, admitted evidence found in Room 228 of the Pocatello Days Inn, denied Parker's Rule 29 motion, and overruled Parker's objection to Jury Instruction No. 16.

## II. BACKGROUND

On June 25, 2024, a grand jury charged the Defendant, Carrey Wayne Parker, with one count of possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2. Dkt. 2.

MEMORANDUM DECISION AND ORDER - 1

Prior to trial, Parker filed several motions in limine. Two are relevant to the present Order. Parker moved to exclude expert testimony by the Government's witnesses, as the Government failed to disclose its intent to introduce expert testimony until after the pretrial deadline. Dkt. 74. And Parker moved to exclude evidence seized from Room 228 of the Days Inn in Pocatello, Idaho. Dkt. 73. When officers entered Room 228, they found a phone labeled "ledger," fentanyl pills, pink and black/dark gray bags, and an individual (David Traversa) overdosing. Parker argued the evidence found in Room 228 was insufficiently connected to him to qualify as relevant under Federal Rule of Evidence 401, and even if it was relevant, Parker argued the Court should exclude it under Federal Rule of Evidence 403 because the risks of confusion and undue prejudice substantially outweighed its probative value.

During the pretrial conference, the Court deferred ruling on the admissibility of the Room 228 evidence, although it noted its concern that the Government would have to introduce sufficient evidence at trial to establish the evidence's relevance. The Court also granted Parker's motion in limine to exclude expert testimony. In the interest of consistency, predictability, and fairness in this case, the Court exercised its discretion to enforce the pretrial disclosure deadline by excluding all expert testimony which was not timely disclosed.[1] The Court noted a written ruling on the exclusion of expert testimony would follow.

At the beginning of the second trial day, the Court again addressed the admissibility

---

[1] A lab technician, whose expert testimony was timely disclosed, was not excluded.

MEMORANDUM DECISION AND ORDER - 2

of Room 228 evidence. The Government, for the first time, argued the evidence was admissible to prove Parker aided and abetted another in the commission of possession with intent to distribute. After a brief recess, the Court found that the possibility of an aiding and abetting theory rendered the evidence found in Room 228 likely relevant to showing, at a minimum, that Parker aided and abetted another in the commission of the charged crime.

Over the course of trial, the jury heard evidence that Parker rented Room 228 (as well as Room 224, which contained a partial bindle baggie) and that he had been spotted by law enforcement officers making short-duration stops at locations known to the officers as hotbeds of drug trafficking activity. The jury also heard the testimony of officers who arrested Parker and who found fentanyl in pink and black/dark gray baggies on his person. Finally, the jury was permitted to compare the baggies of fentanyl Parker had on his person with those found in Room 228, as the Government maintained the bags were identical.

After the Government rested, Parker moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The Court reserved decision on the motion under Rule 29(b). The Court then took up objections to the jury instructions. Parker objected to a portion of Jury Instruction No. 16, which instructed the jury that the Government is not required to prove precisely which individual aided and abetted and which committed the charged crime. The Court noted a written decision on that issue would also follow.

The jury returned a guilty verdict. Dkt. 95. These matters are now ripe for review.

MEMORANDUM DECISION AND ORDER - 3

### III. LEGAL STANDARD

#### A. Exclusion Under Rule 16

Federal Rule of Criminal Procedure 16 requires the Court to set a time for the Government to disclose expert witnesses. Fed. R. Crim. P. 16(a)(1)(G)(ii). If a party fails to comply with its expert disclosure obligations, the Court may, *inter alia*, "prohibit that party from introducing the undisclosed evidence." In the Ninth Circuit, exclusion of untimely-disclosed expert witnesses is not a sanction. *United States v. W.R. Grace*, 526 F.3d 499, 514 (9th Cir. 2008). Rather, exclusion of an untimely disclosed expert witness is understood as enforcing the Court's pretrial order. *United States v. Ornelas*, 906 F.3d 1138, 1150–51 (9th Cir. 2018). The Court has discretion to determine whether to enforce the pretrial order, even when the offending party was not willful or blatant. *Id.* at 1150.

#### B. Federal Rule of Evidence 401

Federal Rule of Evidence 401 sets the standard for relevance. Evidence is relevant if it is probative of a material fact; that is, if "(a) it has *any tendency* to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). Relevance is a permissive standard. "Relevance is established by any showing, however slight, which makes it more likely than it was before the admission of the evidence that the defendant committed the crime in question." *United States v. Federico*, 658 F.2d 1337, 1342 n.5 (9th Cir. 1981), *overruled on other grounds*, *United States v. De Bright*, 730 F.2d 1255, 1259 (9th Cir. 1984). The Court must admit relevant evidence unless it is excluded by the Constitution, statute, or by another rule of evidence. Fed. R. Evid. 402.

MEMORANDUM DECISION AND ORDER - 4

## C. Federal Rule of Evidence 104(b)

Sometimes, the relevance of evidence depends on some other fact. "Such questions of relevance conditioned on a fact are dealt with under Federal Rule of Evidence 104(b)." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later." Fed. R. Evid. 104(b). In applying Rule 104(b),

> the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.

*Huddleston*, 485 U.S. at 690. The Court is accorded the "broadest sort of discretion" in determining whether, in light of "all evidence presented to the jury," this "minimal standard of proof" has been met. *Id.* at 690–91. If the Court admits the evidence, the Court must not withdraw the matter from the jury's consideration unless no reasonable jury could find the predicate fact by a preponderance of the evidence. *United States v. Evans*, 728 F.3d 953, 962 (9th Cir. 2013) (citing the advisory committee notes to Rule 104(b)).

## D. Federal Rule of Evidence 403

Rule 403 allows for the exclusion of relevant evidence if the court finds that its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Ninth Circuit defines "unfair prejudice" as "an undue tendency

to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2014) (cleaned up).

## IV. DISCUSSION

### A. Exclusion of Expert Testimony

The Government concedes it did not timely disclose the expert testimony of its law enforcement officers.[2] Dkt. 78, at 4. But it asked the Court to exercise its discretion to not exclude the testimony because it was substantially disclosed and its failure was inadvertent. Dkt. 78, at 4. During the final pretrial conference, the parties agreed the Court had discretion on whether to exclude the untimely-disclosed expert testimony.

The Court considered several factors in determining that exclusion was warranted.

First, the Court considered the need for predictability and consistency in the application of pretrial deadlines. If the purpose of a pretrial deadline is to provide both sides the fair opportunity to review each other's expert testimony, *see* Fed. R. Crim. P. 16(a)(1)(G)(ii), inconsistent or unpredictable enforcement of pretrial deadlines hampers that goal.

Second, the Court considered the Government's advanced knowledge of the deadline. The Court's standing pretrial order, General Order No. 423, is over three years old and constitutes the uniform pretrial order in this District. The Government knew well in advance of the deadline that expert disclosures must be made "[o]n or before the twenty-eighth (28) day after the arraignment, or forty-five (45) days preceding the trial date,

---

[2] The Court found that testimony about distribution quantities of drugs constitutes expert testimony subject to Fed. R. Evid. 702 and Fed. R. Crim. P. 16(a)(1)(G).

MEMORANDUM DECISION AND ORDER - 6

whichever is later." *See* Dkt. 8.

Third, the Court considered the fact that Parker did not know the Government intended to use distribution amounts testimony until the Government filed its trial memorandum. That memorandum was filed on February 24, 2026, one week before trial.

Fourth, the Court considered the fact that Parker would likely be prejudiced by the late disclosure. Although the Government argued the substance of the evidence was disclosed in advance of the deadline, Parker pointed out that he suffered prejudice in the form of having to locate a rebuttal expert shortly before trial and because his attorneys lost valuable time to prepare a response to the expert testimony. Although the Government did not believe Parker's claims of prejudice, the point of a pretrial disclosure deadline is to avoid claims of prejudice by requiring expert disclosures in enough time to allow parties and their counsel to prepare for trial.

For those reasons, and to give effect to its pretrial order, *see Ornelas*, 906 F.3d at 1150–51, the Court exercised its discretion to exclude the Government's undisclosed expert testimony.

### B. Room 228

The Government maintained the Room 228 evidence was relevant to Parker because the fentanyl, bags, and ledger showed Parker had the intent to distribute the fentanyl found on his person. The Government further argued the evidence was probative of whether one of the room's occupants possessed fentanyl with the intent to distribute, which was a material fact under the aiding and abetting statute. *See* 18 U.S.C. § 2.

The Court initially held the evidence was relevant only if the Government could connect the contents of Room 228 to Parker; that is, if the jury could reasonably conclude Parker was aware of the drugs and/or activities in Room 228. If the jury could not reasonably conclude by a preponderance of the evidence that Parker was aware of the drugs or activities in Room 228, the evidence must be excluded. *See* Rule 104(b); *see also Huddleston*, 485 U.S. at 690. After hearing argument on the issue of aiding and abetting, however, the Court held the evidence was relevant to the issue of whether one of the room's occupants committed the crime of possession of fentanyl with intent to distribute. Accordingly, the Court admitted the evidence found in Room 228.

Now that evidence is closed, the Court can confidently find the Government submitted sufficient evidence to establish the relevance of the contents of Room 228 against Parker on either a direct or aiding and abetting theory of liability. As the Court noted at trial, evidence of fentanyl and other incidents of distribution found in Room 228 are relevant to whether one of the room's occupants possessed fentanyl with the intent to distribute. Thus, the Room 228 evidence was relevant on the aiding and abetting theory. And in light of the substantial evidence admitted at trial connecting Parker to Room 228— including the fact that he rented Room 228 and the fact that the jury could find by a preponderance of the evidence that the baggies and fentanyl found on Parker's person were identical to the baggies and fentanyl found in Room 228—the jury could reasonably find that Parker was aware of the contents of Room 228. Thus, those contents were probative of whether Parker intended to distribute the drugs found on his person as well.

Parker separately objected to the admission of the Room 228 evidence under Rule

MEMORANDUM DECISION AND ORDER - 8

403, arguing that what little relevance the evidence did have was outweighed by the prejudicial effect of hearing about Traversa's overdose and seeing the large quantities of pills. The Court disagreed. In order to be excluded under Rule 403, the probative value of the evidence must have been "substantially outweighed" by the risks (relevant here) of unfair prejudice and confusion of the issues. Fed. R. Evid. 403. Unfair prejudice refers to the possibility that the evidence would lead the jury to render a decision on an improper basis, such as an emotional reaction, rather than the probative value of the evidence itself. *Haischer*, 780 F.3d at 1281.

Here, the risks of unfair prejudice and confusion of the issues did not substantially outweigh the probative value of the evidence. First, the evidence was properly admissible regarding both theories of liability, so the jury could not have confused the issues. Even if the Room 228 evidence had been admissible only on the aiding and abetting theory, however, the risk of confusion was still slight because the jury was properly instructed on the definition of possession. *See* Dkt. 94, at 22. The jury, therefore, knew that it could not convict Parker of possession of the drugs in Room 228 with intent to distribute. *Cf. Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

The risk of unfair prejudice was slight as well. Parker argued the jury could be swept up in the dramatic nature of Traversa's overdose. The actual testimony was far from dramatic: the Government elicited testimony of Traversa's overdose primarily to explain what officers did and when. Nor did the Government present Traversa as a victim of Parker's alleged drug trafficking, as might elicit the jury's sympathy for Traversa and rage at Parker.

MEMORANDUM DECISION AND ORDER - 9

Parker also argued the volume of pills would create an emotional impact on the jurors, leading them to convict Parker whether or not they found Parker connected to the pills. The Court disagreed. First, the jury had sufficient evidence to connect Parker to the pills, as noted above. Thus, to the extent the jury considered "the visual impact of 700 fentanyl pills" as probative of whether Parker intended to distribute the pills on his person or aided and abetted another as to the pills in Room 228, such would not constitute *unfair* prejudice. Second, a mound of pills does not necessarily cause the same kind of emotional impact on a juror as might lead the jury to convict someone—anyone—in order to avenge their inflamed spirits.

The Room 228 evidence was not "matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Haischer*, 780 F.3d at 1282 (quoting *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)). It had substantial probative value, and the risks that evidence of Traversa's overdose or the quantity of pills in Room 228 would lead the jury to convict on an improper basis was minimal. It was, therefore, not excludable under Rule 403.

### C. Rule 29

Parker's Rule 29 motion asked the Court to enter a judgment of acquittal because no reasonable jury could conclude Parker was adequately connected to Room 228, and in the absence of such evidence, there was not enough evidence to show Parker intended to distribute fentanyl or aided and abetted another in the same. Consistent with Rule 29(b) and this Court's standard practice, the Court took the motion under advisement. Dkt. 91, at 1. The Court now denies the motion.

*1. Direct Liability*

The Government presented sufficient evidence to show Parker intended to distribute the drugs found on his person. As noted above, the Government introduced sufficient evidence linking Parker to Room 228 to a degree that the jury could reasonably find by a preponderance of the evidence that he was aware of the drugs and activities in the room and that his baggies came from the same room. Thus, the jury could consider evidence that there was a phone marked "ledger" in the room, there were bindle baggies and ziplock baggies in the room, and there were several hundred fentanyl pills in the room. Additionally, the jury saw evidence Parker rented the room and saw evidence of a bindle bag taken from Room 224 (the other room Parker rented). A reasonable jury could have found this circumstantial evidence of a drug distribution operation, of which Parker was a part, run out of Rooms 224 and 228 of the Days Inn. The jury also heard evidence that Parker made several short duration stops in locations known to police as hotspots of drug distribution—while police were surveilling individuals known to be involved in drug distribution activity.

From this evidence, a reasonable jury could be convinced beyond a reasonable doubt that Parker intended to distribute the drugs on his person.

*2. Aiding and Abetting*

The aiding and abetting instruction will be discussed in more detail below, but Parker also moved for a judgment of acquittal on the aiding and abetting theory of liability.

The Court instructed the jury that there are four elements to aiding and abetting: first, someone else committed the charged crime (here, possession of fentanyl with intent

MEMORANDUM DECISION AND ORDER - 11

to distribute); second, the defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of the charged crime; third, the defendant acted with the intent to facilitate the charged crime; and fourth, the defendant acted before the crime was completed. Dkt. 94, at 18. "Circumstantial evidence may support a conviction for aiding and abetting." *United States v. Boykin*, 785 F.3d 1352, 1359 (9th Cir. 2015).

The jury could have concluded beyond a reasonable doubt that Parker was liable on an aiding and abetting theory. As to the first element, substantial evidence supported the finding that either Parker or Traversa committed the crime of possession of fentanyl with intent to distribute. Parker was found in possession of fentanyl, and Traversa was found with several bindles of fentanyl strapped to his person while actively overdosing.

And, as discussed above, evidence within and without Room 228 supported the conclusion that one or both of Parker and Traversa were intending to distribute fentanyl.

For example, testimony at trial established Parker rented multiple hotel rooms at the Days Inn for very short stays. Law enforcement observed Parker making short duration stops at multiple locations known to be hotspots of drug activity. And evidence found in Room 228—including the number of pills, the large number of small baggies, and the phone marked ledger—suggested the room was being used as a staging location for drug distribution.

Moreover, the jury could have reasonably concluded the baggies full of fentanyl found on Parker's person were identical to and came from the baggies found in Room 228. Thus, the jury could have reasonably concluded that either Parker or Traversa possessed

MEMORANDUM DECISION AND ORDER - 12

fentanyl with the intent to distribute. As to the second and fourth elements, the jury could have reasonably concluded Parker aided Traversa before the crime was committed by renting rooms 224 and 228 or by making several short duration stops to distribute drugs. And as to the third element, the jury could have reasonably concluded Parker knew what he was doing and acted with the intent to facilitate possession with intent to distribute based on his prior renting of Room 228, the evidence of the short duration stops, and the drugs found on his person.

Accordingly, the Court found it appropriate to instruct the jury on aiding and abetting liability.

### D. Instruction No. 16

At the close of trial, Parker objected to the Court's unedited use of the 9th Circuit Model instruction on aiding and abetting. Parker would have omitted the last paragraph of the Court's instruction, which read: "The government is not required to prove precisely which participant actually committed possession with intent to distribute fentanyl and which participant aided and abetted possession with intent to distribute fentanyl." Dkt. 94, at 19. According to Parker, including this language in a single-defendant case relieves the jury of its obligation to unanimously find the defendant guilty beyond a reasonable doubt.

Under 18 U.S.C. § 2, "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Aiding and abetting is not a separate crime from the substantive offense; rather, it is "simply one means of committing a single crime." *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005). Although the Government must prove that the substantive crime

MEMORANDUM DECISION AND ORDER - 13

was committed, it need not identify which principal committed the crime. *United States v. Sutcliffe*, 505 F.3d 944, 959–60 (9th Cir. 2007); *United States v. Powell*, 806 F.2d 1421, 1424 (9th Cir. 1986). "In fact, an aider and abettor's conviction may be upheld even though the principal is acquitted of the underlying offense." *United States v. Mann*, 811 F.2d 495, 497 (9th Cir. 1987).

Because aiding and abetting is an alternate theory of liability rather than a separate offense, the jury is free to disagree on whether the defendant completed the underlying offense or simply aided and abetted someone who did. *Garcia*, 400 F.3d at 819–20. So long as the jury unanimously finds a crime was committed and the defendant is legally responsible, it may lawfully convict the defendant. *Id.* Thus, "'[t]he government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted.'" *United States v. Vaandering*, 50 F.3d 696, 702 (9th Cir. 1995).

The Court instructed the jury using the last paragraph of the model instruction because it believed it accurately stated the law. The Ninth Circuit expressly approved the language Parker objected to in *Vaandering*. *Id.* The language is also consistent with a myriad of cases making clear that a person can be convicted under an aiding and abetting theory in the absence of the principal, *see Mann*, 811 F.2d at 497, or without identifying precisely which possible principal committed the substantive offense, *see Sutcliffe*, 505 F.3d at 960. The language itself is legally correct.

Parker objected that the paragraph relieves the Government of its burden and that it was misleading in a single-defendant case. The Court disagrees. To find Parker guilty on

MEMORANDUM DECISION AND ORDER - 14

an aiding and abetting theory, the Court instructed the jury that it must find the Government

proved each of the following beyond a reasonable doubt:

> First, someone else committed possession with intent to distribute fentanyl; Second, the defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of possession with intent to distribute fentanyl; Third, the defendant acted with the intent to facilitate possession with intent to distribute fentanyl; and Fourth, the defendant acted before the crime was completed.

Dkt. 94, at 18. "It does not matter whether some jurors found that he [committed the

substantive offense] himself, and others that he intended to help someone else who did,

because either way, [the defendant's] liability is the same: as a principal, for committing

the acts charged." *Garcia*, 400 F.3d at 820; *accord United States v. Ferguson*, 676 F.3d

260, 279 (2d Cir. 2011) ("a jury is unanimous even if some jurors convicted on a theory of

principal liability and others on aiding and abetting."); *United States v. Perry*, 401 F. App'x

56, 61–62 (6th Cir. 2010) (collecting cases).

Thus, the Court's instructions required the Government to prove Parker's liability

for possession of fentanyl with intent to distribute beyond a reasonable doubt. Instructing

the jury that it need not agree on which participant committed the substantive offense and

which aided and abetted merely clarifies what the Government is *not* obligated to prove.

For similar reasons, it makes no difference that this is a single-defendant case. As

Parker points out, the last paragraph of the model instruction is immensely important when

the Government charges multiple defendants, all of whom might have committed the crime

or aided and abetted. But just because that language is particularly important in multi-

defendant cases does not mean it is irrelevant—let alone error or misleading—in a single-

MEMORANDUM DECISION AND ORDER - 15

defendant case.

The Government is not required to charge the person who actually committed the crime, *see Mann*, 811 F.2d at 497, it does not need to identify that person at trial, *see Sutcliffe*, 505 F.3d at 960, and it can even argue the substantive perpetrator was a person who has previously been acquitted of the underlying offense. *Standefer v. United States*, 447 U.S. 10, 21–23 (1980). In single defendant cases, as in multi-defendant cases, the Government is free to argue either the defendant or the uncharged principal committed the underlying offense, and it need not prove which person (the defendant or the uncharged principal) committed the substantive offense so long as it proves one of them did. *Mann*, 811 F.2d at 497 (collecting cases). For purposes of aiding and abetting liability, there is no legal significance to the number of criminal defendants.

The Comment to Ninth Circuit Model Criminal Instruction 4.1 notes that the last paragraph may be omitted if there is no dispute as to who was the perpetrator and who was the aider and abettor. Ninth Cir. Manual of Model Criminal Inst. 4.1. cmt. ¶ 9. But the Comment is framed in permissive, rather than mandatory, language. *Id.* The Court did not exercise that permission here because doing so carried an unacceptable risk of misleading the jury. Had it been unavoidably clear that Parker did not commit one of the elements of the substantive offense, the jury could not have convicted Parker as the perpetrator, and there would be no dispute that the only possible principal was Traversa. But the Government's evidence could have led a reasonable juror to conclude that Parker was the principal *or* that he was the aider and abettor. The language clarified that the jury did not

MEMORANDUM DECISION AND ORDER - 16

have to unanimously agree on whether Parker was the aider and abettor or the perpetrator. *See Vaandering*, 50 F.3d at 702.

Finally, Parker argued in briefing that the aiding and abetting instruction was relevant only if the jury could infer his mental state with respect to the evidence found in Room 228. Again, the test for relevance is not exacting: evidence is relevant if it is probative of a material fact. Fed. R. Evid. 401.

As discussed above, circumstantial evidence sufficiently links Parker to Room 228 to pass the bar of relevance. *See Huddleston*, 485 U.S. at 689–90. The jury could have reasonably found that Parker rented Room 228 and possessed baggies and pills which came from Room 228, and, therefore, Parker was aware of the activities within Room 228. Thus, it was for the jury to weigh the strength of that evidence. Based on the sum of the evidence, a reasonable jury could have concluded beyond a reasonable doubt that Parker was aware of the contents of Room 228 or its purpose within a criminal scheme, and that he aided, abetted, counselled, commanded, induced, or procured Traversa with respect to the commission of possession of fentanyl with intent to distribute.

For these reasons, the Court instructed the jury using Instruction No. 16.

### E.  Miscellaneous Housekeeping

For the clarity of the record, the Court will memorialize a few of its rulings made during trial. The Court granted in part and denied in part Dkt. 73, Parker's Motion in Limine Regarding David Traversa and Samantha Frazier. The Court granted the Motion as unopposed in part because the Government agreed it would not use much of the objected-to evidence. The Court denied the Motion as to Room 228 for the reasons given above and

MEMORANDUM DECISION AND ORDER - 17

for the reasons stated in the record. The Court granted Dkt. 74, Parker's Motion in Limine Regarding Dual-Role testimony, for the reasons given above. The Court granted as unopposed Dkt. 75, Parker's Motion in Limine Regarding Statements During Transport, as the Government did not intend to introduce the objected-to testimony.[3] Finally, the Court granted Dkt. 76, Parker's Motion in Limine Regarding Lesser Included Offense Instruction, because the facts supported the instruction.

The Court additionally notes that Parker's pro se Freedom of Information Act Request, Dkt. 27, is moot. Parker asked the Court to provide him discovery materials under the Freedom of Information Act and the Privacy Act. Parker's attorneys were able to secure the information he sought well before trial. Additionally, neither the Freedom of Information Act nor the Privacy Act apply to federal courts. *See* 5 U.S.C. § 551(1)(B) (expressly exempting federal courts from the Freedom of Information Act's definition of "agency"); 5 U.S.C. § 552a(a)(1) (adopting the Freedom of Information Act's definition of "agency" for the Privacy Act). Accordingly, the Court DENIES Parker's Request AS MOOT.

### V. CONCLUSION

For the reasons given above, the Court excluded the Government's untimely-disclosed expert testimony, admitted evidence found in Room 228, denies Parker's Rule 29 motion, instructed the jury according to the Ninth Circuit's model jury instruction on aiding and abetting, and ruled as it did on the remaining outstanding motions.

---

[3] The objected-to testimony eventually came in at Parker's behest during his cross examination of Sgt. Bloxham.

MEMORANDUM DECISION AND ORDER - 18

## VI. ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Parker's Motion in Limine Regarding David Traversa and Samatha Frazier (Dkt. 73) is GRANTED IN PART and DENIED IN PART as stated above.

2. Parker's Motion in Limine Regarding Dual-Role Testimony (Dkt. 74) is GRANTED.

3. Parker's Motion in Limine Regarding Statements During Transport (Dkt. 75) is GRANTED.

4. Parker's Motion in Limine Regarding Lesser Included Offense Instruction (Dkt. 76) is GRANTED.

5. Parker's Freedom of Information Act Request (Dkt. 27) is DENIED AS MOOT.

6. Parker's Rule 29 Motion is DENIED.

7. Parker's Objection Regarding Instruction No. 16 is OVERRULED.

DATED: June 9, 2026

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 19